Filed 12/8/21  P. v. Tovar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY TOVAR,<br><br>    Defendant and Appellant. | F082009<br><br>(Super. Ct. No. BF174788A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Thomas R. O'Brien, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Anthony Tovar pleaded no contest to being a felon in possession of a firearm and was sentenced to state prison. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS

The following facts are from the evidentiary hearing on defendant's suppression motion, where the parties stipulated that the defendant was detained and searched without a warrant.

At 1:14 a.m. on December 9, 2018, the 911 dispatcher received a call that a subject with a gun was threatening to shoot people at a house party on Oregon Street in Bakersfield. The dispatcher asked for the caller's name, but the caller declined and remained anonymous.

The dispatcher asked the caller for a description of the subject. The caller said the subject was a "Black male, early 20s in a black jacket, black knit cap, blue jeans, waving a black handgun in the air, threatening to shoot subjects, possibly gang affiliated … with a large house party to the front," and the subject was still at the scene. The caller said the person with the firearm was wearing a black beanie. The dispatcher recorded that information as a "knit cap," consistent with her training, and transmitted this information to officers.

Officer Peña received the call and description at 1:30 p.m. and responded to the area. When Peña turned onto Oregon Street, he saw a man walking westbound on the sidewalk. The man was three houses away from the address given by the caller. Peña testified there was an active party still taking place on Oregon Street, and he could hear the people and noise coming from that house. The man was walking away from the house where the party was.

2.

Officer Peña believed this person, later identified as defendant, appeared to match the description given by dispatch. Defendant appeared to be in his 20s, and he was wearing a dark-colored sweatshirt, dark jeans, and a dark hat.

Officer Peña testified that while he was still in his patrol car, he "observed a large bulge protruding from [defendant's] hooded sweatshirt, front pocket, and this was hanging lower on his right side." Based on his training and experience, Peña believed the bulge and the sagging jacket indicated there was a firearm in the pocket.

Officer Peña testified he got out of his patrol car and "briefly" contacted defendant. Peña determined he was wearing a blue baseball cap that was turned backwards. Peña told defendant that "somebody called saying that there was somebody with a firearm threatening to shoot others. I was going to search him for my safety." Defendant said it was not him but complied with the search. During the patdown search, Peña felt a firearm in defendant's sweatshirt pocket and removed it. Peña asked defendant if he had a concealed weapons permit. Defendant said no.

## PROCEDURAL BACKGROUND

On June 10, 2019, an information was filed in the Superior Court of Kern County charging defendant with count 1, felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1));[1] count 2, possession of a concealed firearm (§ 25400, subd. (c)(4)); and count 3, possession of a firearm that was prohibited in a public place, (§ 25850, subd. (c)(4)). It was further alleged that defendant had one prior strike conviction and one prior prison term enhancement (§ 667.5, subd. (b)).

**Suppression motion**

On August 2, 2019, defendant filed a motion to suppress evidence pursuant to section 1538.5, and argued he was unlawfully detained and searched, and the firearm seized, without a warrant.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

On August 16, 2019, the district attorney filed opposition, and argued the officer had reasonable suspicion and probable cause to stop and search defendant because he met the description of the subject, and the officer independently saw evidence consistent with being in possession of a handgun.

On December 18, 2019, the court conducted an evidentiary hearing on the suppression motion, with the evidence as summarized above. The court denied the motion.

> "The Court believes there was a reasonable suspicion for Officer Peña to stop [defendant]. While certainly the description is not an exact match, it is close enough, as far as I'm concerned, under the circumstances. Particularly in viewing the photographs that were admitted [of defendant's clothing] …, [defendant] appears to be wearing dark clothing at 1:15 in the … early morning hours under streetlights. It certainly would be hard to distinguish whether that is a blue or black pair of pants. He's wearing a baseball cap turned backwards. If you are looking at him from the front it would appear to be similar to a beanie or knit cap, whichever version of the description you want to use.

> "I don't think that [defendant's age] being 28 verses 24 [years old] is a significant enough difference from the officer's point. He doesn't know how old [defendant] is. But I don't think that, as I see him here in court, that it would be an unreasonable suspicion to think that he's in his early 20s. For those reasons I think he had a reasonable suspicion to stop [defendant]. The officer is entitled to have a reasonable amount of time to investigate whether he's involved in that particular incident that was described on the 911 call in making a decision whether to arrest or release him.

> "Under the circumstances, also viewing the obvious bulge in the front sweatshirt pocket having a lower sag on the right side of the sweatshirt pocket, I think also allowed him to do a pat down of [defendant] and then discovered the weapon…."

**Plea and failure to appear**

On March 11, 2020, defendant pleaded no contest to the three charged offenses and admitted the prior strike conviction for an indicated sentence of 32 months in prison, based on imposition of the lower term. The court granted the prosecution's motion to

dismiss the prior serious prison term enhancement. Defendant, who was on bail, entered a waiver pursuant to *People v. Cruz* (1988) 44 Cal.3d 1247, and the court ordered him to appear for the sentencing hearing on May 26, 2020.[2]

On May 26, 2020, defendant failed to appear for the sentencing hearing as ordered. The court ordered his bail forfeited and issued a no-bail bench warrant.

On July 20, 2020, defendant was returned to custody and appeared in court.

**Sentencing**

On October 20, 2020, the court held the sentencing hearing. Defense counsel argued defendant did not violate the *Cruz* waiver when he failed to appear because he was complying with the COVID-19 shutdown orders, he did not think he could leave his home, and he wanted to protect his family. Counsel acknowledged defendant should have advised the court and counsel that he was not going to appear, but he was eventually arrested inside his house without any contraband. The prosecutor replied that he agreed to the *Cruz* waiver to give defendant time to put his affairs in order. The district attorney's office had reopened by the time of defendant's sentencing hearing, and defendant failed to show up in court and failed to contact that office for months after the bench warrant was issued.

The court found defendant violated the *Cruz* waiver. The court denied probation and sentenced him to midterm of two years for count 1, doubled to four years as the second strike term, and imposed concurrent terms for counts 2 and 3.

The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $300 (§ 1202.45) and also imposed $120 in court operations

---

[2] "A '*Cruz* waiver' gives a trial court the power to 'withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term,' if the defendant willfully fails to appear for sentencing. [Citation.]" (*People v. Puente* (2008) 165 Cal.App.4th 1143, 1146, fn. 3.)

assessments (§ 1465.8) and $90 in criminal conviction assessments (Gov. Code, § 70373).

On October 26, 2020, defendant filed a timely notice of appeal based on the denial of his suppression motion.

## **DISCUSSION**

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on February 18, 2021, we invited defendant to submit additional briefing. He has failed to do so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.