Filed 5/14/25  P. v. Vasquez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALBERT CURTIS VASQUEZ, <br><br> Defendant and Appellant. | B334609 <br><br> (Los Angeles County <br> Super. Ct. No. BA494439) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed in part, dismissed in part.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kristen J. Inberg and J. Michael

Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Albert Curtis Vasquez appeals from his conviction by guilty plea to possession of a firearm by a felon and his conviction after a jury trial for second degree murder. He argues the trial court made improper comments on his decision to testify and on the trial evidence, violating his rights under the Fifth, Sixth, and Fourteenth Amendments. He further argues his plea must be vacated because Penal Code section 29800, the felon in possession statute, violates the Second Amendment.[1] We dismiss Vasquez's appeal from his guilty plea because Vasquez did not obtain a certificate of probable cause under section 1237.5. We otherwise affirm because the trial court's comments were not constitutionally infirm when examined in context.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.   *Information*

In March 2021, Vasquez was living in a Koreatown tent encampment when he shot and killed Everett Cain, another resident of the encampment. On August 23, 2022, Vasquez was charged by information with murder (count 1; § 187, subd. (a)). The information alleged Vasquez personally used a firearm in the commission of the murder within the meaning of section 12022.5, subdivision (a). Vasquez was also charged with possession of a firearm by a felon (count 2; § 29800, subd. (a)(1)), with the

_____

[1]   Undesignated statutory references are to the Penal Code.

2

allegation that Vasquez had been previously convicted of two felony burglary charges (§ 459).

B.    *Jury Trial*

The court held a jury trial beginning on June 27, 2023.  On the first day of trial, before jury selection, Vasquez pleaded guilty to the charge in count 2 of possession of a firearm by a felon. Vasquez proceeded to trial on count 1.

The trial court advised prospective jurors on Vasquez's Fifth Amendment right not to testify at trial.  As relevant here, the court stated:

> "[T]he Fifth Amendment right that we all have . . . is a right under the law that says you cannot be compelled to testify if you are charged with an offense or in a trial. . . .

> "[A] decision will be made by Mr. Vasquez as to whether he will testify or not.  Nobody can compel him to do that.  What I can tell you about people testifying or not testifying is that in my judgment people don't testify for a lot of different reasons. . . .

> "Mr. Vasquez does not have a burden of proof.  He doesn't have to prove he is innocent.  The only person, as I've told you, that has the burden of proof in this courtroom is [the prosecutor], and he must prove the defendant guilty beyond a reasonable doubt.  So, many times after the People have presented all their witnesses and all their evidence

and the People rest and sit down, the defendant and
his lawyer will look at each other and a decision will
be made based on tactics and strategy that says,
'[The prosecutor] didn't prove his case beyond a
reasonable doubt.  The jury has to find me not guilty
so I will not testify.'  There are a whole host of
reasons why people do not testify."

Vasquez did not object to this instruction from the court.

At trial, after the prosecution presented its case, Vasquez
testified in his own defense.  On cross-examination, the
prosecutor asked Vasquez, "You destroyed the murder weapon,
didn't you?"  Vasquez's counsel objected to "characterization of
[the gun] as a murder weapon," because it "calls for a legal
conclusion."  The court stated, "I'm inclined to overrule the
objection based upon the testimony that's been given in the trial.
But at the same time, I will simply ask if [the prosecutor] will
restate the question."  The court ruled that the "objection is
sustained," and the prosecutor rephrased the question without
referring to a "murder weapon."

C.    *Conviction and Sentence*
The jury convicted Vasquez of second degree murder and
found true the allegation that Vasquez personally used a firearm
in the commission of the offense.  The trial court sentenced
Vasquez to a total prison term of 18 years and eight months to
life.

Vasquez timely appealed.

4

**DISCUSSION**

A.   *The Trial Court's Statements Did Not Violate Vasquez's Constitutional Rights*

Vasquez argues the trial court's comments on his decision whether to testify in his own defense and on the evidence of a "murder weapon" violated his constitutional rights against self-incrimination, to due process, and to trial by an impartial jury.

1.   *Governing Law and Standard of Review*

The Fifth Amendment to the federal constitution provides a right against compelled self-incrimination.  (See U.S. Const., 5th Amend.; *People v. Tom* (2014) 59 Cal.4th 1210, 1222-1223.)  In *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*), the United States Supreme Court held the Fifth Amendment forbids "comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Id.* at p. 615; see *People v. Thompson* (2016) 1 Cal.5th 1043, 1117-1118 (*Thompson*) [*Griffin* "prohibit[s] comment on a defendant's silence by the trial judge"].)

Judicial comments may also run afoul of the constitution if they demonstrate bias and deprive a defendant of due process or a fair trial.  (See U.S. Const., 5th & 14th Amends.; *People v. Freeman* (2010) 47 Cal.4th 993, 1000 ["[t]he operation of the due process clause in the realm of judicial impartiality . . . is primarily to protect the individual's right to a fair trial"].)  Constitutional due process requires "'a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  (*People v. Harris* (2005) 37 Cal.4th 310, 346.)  As the reviewing court, "'[o]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether

5

some comments would have been better left unsaid.  Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'" (*People v. Snow* (2003) 30 Cal.4th 43, 78; accord, *Harris*, at p. 347.)  "In deciding whether a trial court has manifested bias in the presentation of evidence, we have said that such a violation occurs only where the judge "'officiously and unnecessarily usurp[ed] the duties of the prosecutor . . . and in so doing create[d] the impression that he [was] allying himself with the prosecution."'" (*Harris*, at p. 347.)

Similarly, commentary on the evidence by a trial judge may violate the defendant's right to an impartial jury under the Sixth Amendment.  Indeed, "'a trial court that chooses to comment to the jury must be extremely careful to exercise its power "with wisdom and restraint and with a view to protecting the rights of the defendant." [Citations.]  The court's comments must be scrupulously fair and may not invade the province of the jury as the exclusive trier of fact.'" (*People v. Rodriguez* (1986) 42 Cal.3d 730, 772.)  Under a Sixth Amendment lens, appellate courts must "evaluate the propriety of judicial comment on a case-by-case basis, noting whether the peculiar content and circumstances of the court's remarks deprived the accused of his right to trial by jury." (*Id.* at p. 770.)

We review de novo claims of constitutional error on undisputed facts.  (See *People v. Frazier* (2020) 55 Cal.App.5th 858, 864; accord, *In re Taylor* (2015) 60 Cal.4th 1019, 1035.)  "If an error violates a defendant's federal constitutional rights, reversal is required unless the error was harmless beyond a reasonable doubt." (*People v. Hernandez* (2011) 51 Cal.4th 733, 745, citing *Chapman v. California* (1967) 386 U.S. 18, 24; see

6

*People v. Woodruff* (2018) 5 Cal.5th 697, 759 [applying *Chapman* standard to due process claim]; *Thompson, supra,* 1 Cal.5th at p. 1118 [same, to *Griffin* error]; *People v. Clair* (1992) 2 Cal.4th 629, 669, fn. 10 [same, to alleged violation of right to impartial jury].)

### 2. *The Trial Court Did Not Violate* Griffin

Vasquez argues the trial court impermissibly commented on his Fifth Amendment right to remain silent by stating during voir dire that after "the People rest . . . , the defendant and his lawyer will look at each other and a decision will be made based on tactics and strategy that says, '[The prosecutor] didn't prove his case beyond a reasonable doubt.  The jury has to find me not guilty so I will not testify.'"  Vasquez contends that, because he did testify, the court's remark "suggested that [Vasquez] would only testify if the government had succeeded in proving its case" and therefore "shifted the burden to [Vasquez] to disprove the government's case."

Vasquez did not object to the court's statement at trial, and he has forfeited the issue for appeal.  (See *People v. Lewis* (2001) 25 Cal.4th 610, 670 [*Griffin* claim forfeited where "defense counsel neither objected to the prosecutor's remarks on this or any other basis, nor requested an admonition from the trial court to cure any perceived harm"]; accord, *People v. Turner* (2004) 34 Cal.4th 406, 420; *People v. Miller* (1990) 50 Cal.3d 954, 1000 (*Miller*).)

But even if we consider the argument on the merits, Vasquez does not demonstrate error.  In *Griffin, supra,* 380 U.S. 609, the defendant did not testify at trial and the trial court instructed the jury it could consider the defendant's "failure" to

7

explain "facts within his knowledge" because "he d[id] not testify." (*Id.* at pp. 609-610.) *Griffin* held it was error to "solemnize[ ] the silence of the accused into evidence against him." (*Id.* at p. 614.) Here, however, Vasquez did testify at trial. Vasquez does not cite any authority finding *Griffin* error when the defendant actually testified at trial. (See *Miller, supra,* 50 Cal.3d at p. 1000 ["the comments were not misconduct; they did not 'draw attention to the defendant's right not to testify' since he did testify"'; concluding no *Griffin* error from prosecutor's comments].)

Further, the challenged statement occurred during voir dire and was part of the trial court's explanation of the Fifth Amendment privilege to potential jurors. The court, perhaps inartfully, explained that what it described was one example from "a whole host of reasons why people do not testify." In *People v. Carter* (2005) 36 Cal.4th 1114, defense counsel argued in closing that the jury could not hold the defendant's silence against him because "'*[t]here are many reasons that a defendant may or might not testify in a case,*'" including that "'[s]ome people tell the truth in this kind of setting, some people lie poorly.'" (*Id.* at p. 1191.) This comment "manifestly did not constitute the type of comments that *Griffin* declared invalid," because "[v]iewing defense counsel's remarks in their proper context, it is clear that counsel was not suggesting that the jury draw any sort of adverse inference from defendant's silence. . . . [C]ounsel merely sought to explain to the jury that there are 'many reasons' why a defendant may not testify, including the 'hypothetical[]' possibility that '[s]ome people tell the truth . . . some people lie poorly.'" (*Id.* at p. 1192.)

8

Viewed in context, the trial court's comment in this case did not violate *Griffin*.  Here, the trial court provided several reasons why a defendant might not testify, including "nervous[ness]" or fear "[he] will not be believed," and it went on to explain that it was speaking "theoretically" about a defendant's decision whether to testify.  And it confirmed with the potential jurors that "even though Mr. Vasquez does not testify in this case, even though you might want to hear from Mr. Vasquez, can you still decide the case fairly and impartially?"  Although Vasquez argues the trial court's comment "shift[ed] the burden of proof," the court repeatedly advised the jury that Vasquez did not have to prove his innocence.  When explaining at voir dire the defendant's decision to testify, the court emphasized that "Vasquez does not have a burden of proof.  He doesn't have to prove he is innocent."  The court stated at the beginning of trial and when charging the jury that, "A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove the defendant guilty beyond a reasonable doubt."

3.   *The Trial Court's Commentary on the Evidence Did Not Violate Vasquez's Fifth and Sixth Amendment Rights*

Vasquez further argues the court violated his Fifth and Sixth Amendment rights when it stated, "I'm inclined to overrule the objection [to the prosecutor's use of the phrase "murder weapon"] based upon the testimony that's been given in the trial."  Vasquez contends this statement "served as confirmation for the jury that . . . the State had established every element of the crime."  He argues the statement exhibited bias toward the prosecution, violating his rights to due process and a fair trial,

9

and it improperly influenced the jury's factfinding in violation of his right to an impartial jury. Although Vasquez objected to the prosecutor's question, Vasquez did not object to the trial court's statement or request a curative instruction, and this argument is also forfeited. (See *People v. Cash* (2002) 28 Cal.4th 703, 730 ["[t]o preserve the issue for review, a defendant must make a timely objection" to challenged judicial comment].)

But even considering the argument on the merits, the court's statement did not exhibit judicial bias toward the prosecution or violate his right to an impartial jury. Under Article VI, section 10 of the California Constitution, "The court may make any comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." Further, in *People v. Monterroso* (2004) 34 Cal.4th 743 (*Monterroso*), the prosecutor argued that the murder was racially motivated, the defendant "objected that there was no evidence this was a racist killing," and the trial court overruled the objection as a "'fair comment on the evidence.'" (*Id.* at p. 783.) The California Supreme Court held the trial court's statement did not violate state or federal due process, the right to a fair trial, or the right to an impartial jury because it was not "misconduct for the court to state briefly the basis for overruling the objection. The court's observation that the inference was permissible was hardly equivalent to an instruction that it was obligatory." (*Ibid.*; see *id.* at p. 780 [applying "the state and federal Constitutions"].)

This rule applies to the court's commentary in ruling on Vasquez's evidentiary objection. The court briefly stated the basis for its "inclin[ation] to overrule [Vasquez's] objection," "based upon the testimony that's been given in the trial," but

10

then it sustained the objection and directed the prosecutor to rephrase. As in *Monterroso*, the observation was not an obligatory instruction to the jury regarding the state of the evidence and whether there was sufficient evidence of murder. Additionally, the comment was fleeting. Under these circumstances, the court's comment did not demonstrate judicial bias or infringe on the jury's factfinding. (See *People v. Pearson* (2013) 56 Cal.4th 393, 444 [trial judge did not "unfairly bolster[] the prosecutor's argument" where evidentiary ruling implied the defendant's conduct "could be considered evidence of [premeditation]" but did not "improperly tell the jury that evidence of the threats constituted sufficient proof"]; accord, *People v. Seumanu* (2015) 61 Cal.4th 1293, 1320-1321 (*Seumanu*) [no due process violation where court's comment about witness during evidentiary ruling was "single, fleeting, and ambiguous" and did not exhibit judicial bias]; cf. *People v. Sturm* (2006) 37 Cal.4th 1218, 1230-1233 [trial judge erred and "bolstered the prosecutor's argument . . . in telling the jury that premeditation was a 'gimme' and that the issue of premeditation was 'all over and done with'"].)

Further, the jury was instructed at the beginning of trial and before deliberations to disregard "anything [the court] said or did during the trial as an indication of what [the court] think[s] about the evidence, the witnesses, or what your verdict should be. It is not my role to tell you what your verdict should be. You are the sole judges of the evidence and believability of witnesses. It is up to you and you alone to decide the issues in this case." We assume the jury followed these instructions. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 30; see also *People v. Linwood* (2003) 105 Cal.App.4th 59, 74 [no prejudice from comment on evidence

11

where "the jury was instructed . . . that the court had not intended by anything it had said or done to suggest what the jury should find as the facts and that the court's comments were not binding"]; accord, *Seumanu*, *supra*, 61 Cal.4th at p. 1321 [same, where court's comment was "solitary and fleeting"]; *People v. Brown* (2003) 31 Cal.4th 518, 539-540.)

B.     *Vasquez Did Not Preserve His Claim That Section 29800 Violates the Second Amendment*

For the first time on appeal, Vasquez argues his conviction for possession of a firearm by a felon violates his Second Amendment rights under *United States v. Rahimi* (2024) 602 U.S. 680 (*Rahimi*).  Vasquez's challenge to his section 29800 conviction is barred because he did not obtain a certificate of appealability.  "[I]f the judgment resulted from a guilty or no contest plea, Penal Code section 1237.5, subdivisions (a) and (b), provide that no appeal may be taken unless '[t]he defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings,' and the court 'has executed and filed a certificate of probable cause for such appeal with the clerk of the court.'" (*People v. Stamps* (2020) 9 Cal.5th 685, 694, fn. omitted (*Stamps*).)  Section 1237.5 contains two exceptions: if the defendant appeals "'postplea matters not challenging his plea's validity,'" or "'matters involving a search or seizure whose lawfulness was contested pursuant to section 1538.5.'"  (*Stamps,* at p. 694.)

Vasquez concedes he did not request or obtain a certificate of probable cause, but he argues that any "effort to do so would

12

have been pointless" because the decision in *Rahimi* post-dated his guilty plea, constituting "a significant change in the law of the Second Amendment."  A certificate of probable cause is not required when a defendant "seek[s] retroactive application of a subsequently enacted ameliorative provision," because this amounts to a claim of "postplea error."  (*Stamps*, *supra*, 9 Cal.5th at p. 696 [allowing appellate claim under newly enacted Senate Bill No. 1393 to proceed without certificate].)

According to Vasquez, *Rahimi* overruled California case law upholding section 29800 under *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), because *Rahimi* clarified that a person cannot "be disarmed simply because he is not 'responsible.'"[2]  But *Rahimi* did not create any ameliorative change in the law affecting felon-in-possession convictions.  Instead, it applied the Second Amendment test previously articulated in *Bruen*, *supra*, 597 U.S. 1, and in *District of Columbia v. Heller* (2008) 554 U.S. 570, both of which were decided before Vasquez pleaded guilty to being a felon in possession of a firearm in June 2023.  (See *Rahimi*, *supra*, 602 U.S. at p. 692 [applying *Bruen* test]; *Bruen*, at p. 26 ["The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."].)  In any event, *Rahimi* reiterated "that many [firearm]

---

[2]  Even after *Rahimi*, "California Courts of Appeal have consistently upheld section 29800 against constitutional challenge."  (*People v. Bey* (2025) 108 Cal.App.5th 144, 161; accord, *People v. Gomez* (2025) 110 Cal.App.5th 419, 437-439; *People v. Richardson* (2025) 108 Cal.App.5th 1203, 1211-1213; *People v. Anderson* (2024) 104 Cal.App.5th 577, 599-600.)

13

prohibitions, like those on the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful.'" (*Rahimi*, at p. 699, quoting *Heller*, at p. 626.)

We conclude Vasquez effectively "challenge[s] his plea as defective when made," and he should have raised it in an application for a certificate of probable cause. (*Stamps, supra*, 9 Cal.5th at p. 696.) Vasquez did not obtain a certificate of probable cause, and we must therefore dismiss this portion of his appeal. (See *People v. Puente* (2008) 165 Cal.App.4th 1143, 1149 ["In the absence of full compliance and a certificate of probable cause, the reviewing court may not reach the merits of any issue challenging the validity of the plea, but must order dismissal of the appeal."]; accord, *People v. Mendez* (1999) 19 Cal.4th 1084, 1099 [section 1237.5 is "applied in a strict manner" and reviewing court "must decline to address certificate issues"].)

## DISPOSITION

Vasquez's appeal challenging his conviction under section 29800, subdivision (a)(1), is dismissed. The judgment is otherwise affirmed.

MARTINEZ, P. J.

We concur:

SEGAL, J.                                    PULOS, J. [*]

---

[*]     Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14