Filed 7/10/25  P. v. Miller CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>KYLE LEE MILLER,<br><br>　　　　Defendant and Appellant. | A170446<br><br>(Del Norte County<br>　Super. Ct. No. CF239519) |

Defendant Kyle Lee Miller entered a plea of no contest which included a so-called *Cruz* waiver,[1] on which the trial court relied to sentence Miller to three years in prison after finding he violated the waiver's terms.  Miller contends the court violated his due process rights by finding a *Cruz* waiver violation without first advising him of his *Boykin–Tahl*[2] rights.  We affirm.

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5 (*Cruz*) (absent a valid waiver, a court may not reject the plea bargain of a defendant who has pleaded guilty and failed to appear for sentencing, then impose a higher sentence without first giving the defendant the opportunity to withdraw the plea).

[2] *Boykin v. Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122.

## I. BACKGROUND

In November 2023, Miller was charged with infliction of corporal injury (Pen. Code, § 273.5, subd. (a); count 1);[3] possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2); misdemeanor child abuse (§ 273a, subd. (b); count 3); and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 4). The complaint alleged aggravating factors, including that Miller had served a prior term in prison or county jail under section 1170, subdivision (h).

In January 2024, Miller pleaded no contest to the firearm charge (count 2) pursuant to an agreement to a two-year midterm prison sentence and dismissal of the remaining charges. As part of the plea agreement, Miller entered a *Cruz* waiver to be released from custody pending sentencing. On the plea form, Miller initialed boxes next to paragraphs adding language which stated, "[F]or purposes of a Cruz waiver only, I waive my rights concerning aggravating factors, and admit I have served a prison term or a jail term pursuant to [section] 1170[, subdivision ](h)." "I will be sentenced to the middle term of 2 years. I will be released on a Cruz waiver. If I violate the Cruz waiver, I can be sentenced to the upper term of 3 years in state prison." Miller also initialed boxes next to paragraphs confirming he understood, and waived, his constitutional rights.

At the plea hearing, the trial court advised Miller that if he were released on a *Cruz* waiver and failed to obey all laws or failed to appear for sentencing, the sentence could be aggravated from two years to three years. Miller confirmed he understood. Miller understood that if, on the other hand, he obeyed all laws and appeared for sentencing, then pursuant to his plea

---

[3] Undesignated statutory references are to the Penal Code.

agreement the court could not impose the three-year upper term. Miller agreed to the *Cruz* waiver. Additionally, the court advised Miller he had constitutional rights to a jury trial, to remain silent, and to confront his accusers, and Miller waived those rights. He pleaded no contest to count 2 and admitted the aggravating factor that he had served a prior prison or county jail term. The court found Miller knowingly, intelligently, freely, and voluntarily made his plea and waived his rights. Miller was then released pursuant to the *Cruz* waiver.

On April 22, 2024, the trial court conducted the sentencing hearing. At the outset of the hearing, the prosecutor informed the court that Miller had been arrested over the weekend for driving under the influence (DUI) and asserted it was a violation of the *Cruz* waiver. Since the arrest had happened the previous Friday night (the hearing was a Monday morning), the People had not yet filed a new case. The prosecutor provided defense counsel and the court with the California Highway Patrol (CHP) report of the DUI. The court then took a recess to deal with a different matter. When the hearing resumed, referring to the CHP report, the court asked defense counsel, "Is there any objection for me to look at it solely for the purposes of a violation of Cruz?" Defense counsel replied, "No, Your Honor." Miller immediately spoke up to "apologize," stating he understood court was "a serious place" and he was "in a serious situation." He explained he was in a "bad place" because he did not know what his family was going to do when he was gone, because he supported them.

The prosecutor argued the CHP report demonstrated there had been a *Cruz* waiver violation and asked the court to impose the three-year upper term sentence. The prosecutor and defense counsel argued why the court should, or should not, impose the upper term sentence. Defense counsel

3

eventually stated, "Your Honor, I can't deny the reality that the [c]ourt has in its hands the report of April 19th. I would ask the [c]ourt . . . [to] sentence my client to the two years." Based on its review of the report, the court explained that on Friday, April 19, 2024, a CHP officer stopped Miller for a DUI, and Miller subsequently blew a .17 blood alcohol level. The court asked defense counsel, "Do you . . . agree that is a Cruz waiver violation?" Counsel replied, "I would agree the [c]ourt has sufficient evidence before it to find as such, yes." Miller again spoke up. He argued he did not deserve a three-year sentence and requested two years.

The trial court determined there was "clearly an obvious Cruz waiver violation." Considering aggravating circumstances, the court observed that Miller had stipulated to serving a prior prison or jail term under section 1170, subdivision (h). The court did not find any mitigating circumstances. Therefore, the court sentenced Miller to prison for the upper term of three years. Miller appealed and did not obtain a certificate of probable cause.

## II. DISCUSSION

Miller argues his due process rights were violated when the trial court found that he violated the *Cruz* waiver without first advising him of his *Boykin–Tahl* rights and obtaining his waiver of those rights.

### 1. *Plea Agreements and* Cruz *Waivers*

Section 1192.5 provides that a trial court may not impose punishment more severe than that agreed upon by the parties without giving notice to the defendant and providing him the ability to withdraw his plea. At entry of plea, the court must advise the defendant that (1) its approval of the plea agreement is not binding, (2) it may withdraw its approval in the light of further consideration of the matter, and (3) in such cases, the defendant shall

4

be permitted to withdraw his plea if he desires to do so. (§ 1192.5, subds. (b), (c).) *Cruz* allows a defendant to enter a limited waiver of section 1192.5 rights. Under a *Cruz* waiver, a defendant may waive his right to withdraw a plea and may agree to a greater sentence as a sanction for willfully failing to appear for sentencing or violating other agreed-upon conditions. (*Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5; *People v. Masloski* (2001) 25 Cal.4th 1212, 1219–1224; *People v. Vargas* (1990) 223 Cal.App.3d 1107, 1113; *People v. Carr* (2006) 143 Cal.App.4th 786, 790 [the defendant agreed not to " 'violate any law' " between the date of the plea and sentencing].)

## 2. *Certificate of Probable Cause*

The People contend the appeal must be dismissed because Miller did not obtain a certificate of probable cause. We reject this contention.

A defendant must obtain a certificate of probable cause to appeal from a judgment entered on a guilty plea or plea of no contest unless the appeal falls within an exception. (§ 1237.5; Cal. Rules of Court, rule 8.304(b).) A defendant need not comply with section 1237.5 if the appeal is based on the "sentence or other matters occurring after the plea . . . that do not affect the validity of the plea." (Cal. Rules of Court, rule 8.304(b)(2)(B).)

" 'In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.' " (*People v. Buttram* (2003) 30 Cal.4th 773, 781–782 (*Buttram*).) Our Supreme Court has "held that the certificate requirement does not apply when the defendant 'is not

5

seeking to vacate the plea,' but 'assert[s] only that errors occurred in the . . . adversary hearings conducted by the trial court for the purpose of determining the degree of the crime and the penalty to be imposed.' ([*People v.*] *Ward* [(1967)] 66 Cal.2d 571, 574.)" (*Id.* at p. 784.) "This exception has been interpreted to include claims involving alleged violations of the plea agreement." (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 500 (*Rabanales*).) A *Cruz* waiver is considered "an integral part of defendant's plea agreement." (*People v. Vargas* (2007) 148 Cal.App.4th 644, 652.)

Miller's notice of appeal states the appeal "is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea." The People argue that Miller's challenge is, in substance, a challenge to the validity of the plea. We disagree. Considering Miller's arguments, he is not challenging the validity of the plea, the validity of the *Cruz* waiver, or the trial court's authority to impose the upper term sentence if he violated the *Cruz* waiver. Instead, he is challenging the process by which the court found he had violated the *Cruz* waiver. (See *Buttram*, *supra*, 30 Cal.4th at p. 783 [our Supreme Court has "made clear that where the terms of the plea agreement leave issues open for resolution by litigation, appellate claims arising within the scope of that litigation do not attack the validity of the plea, and thus do not require a certificate of probable cause"].)

The cases on which the People rely do not assist them. In *People v. Shelton* (2006) 37 Cal.4th 759 and *People v. Young* (2000) 77 Cal.App.4th 827, the defendants' failure to obtain certificates of probable cause mandated dismissal of their appeals. They involved circumstances where the defendants were attacking the validity of their pleas. (See *Young*, at pp. 830, 832 [when the plea agreement was for a maximum sentence, and the trial court imposed the maximum sentence, the defendant's argument that his

6

sentence constituted cruel and unusual punishment was, in effect, an argument that part of his plea bargain was illegal]; *Shelton*, at p. 769 [while the plea agreement permitted the defendant to argue for a lesser sentence, the parties understood that the court "had authority to impose the lid sentence," and the defendant did not reserve a right to challenge the court's authority to impose the specified lid sentence]; see also *Buttram*, *supra*, 30 Cal.4th at pp. 777, 790 [Supreme Court has distinguished a situation where a defendant challenges the trial court's *authority* to impose an agreed maximum sentence from a situation where a defendant challenges the court's *exercise of discretion* within an agreed maximum sentence].) Here, Miller is not challenging the court's authority to impose the upper term sentence to which he agreed as part of his plea bargain were he to violate the *Cruz* waiver. Instead, he " 'is asserting only that errors occurred in the subsequent adversary hearing[ ] conducted by the trial court for the purpose of determining . . . the penalty to be imposed.' " (*People v. Johnson* (2009) 47 Cal.4th 668, 677.)

*People v. Puente* (2008) 165 Cal.App.4th 1143 (*Puente*) provides guidance. There, the plea agreement included *Cruz* and *Vargas*[4] waivers. If the defendant complied with the waiver conditions, then his six-year prison sentence, the execution of which had been stayed, would be reduced to four years. When the defendant failed to appear for sentencing, the trial court

---

[4] "The term '*Vargas* waiver' is derived from the case of *People v. Vargas*[, *supra*,] 223 Cal.App.3d [at page] 1113 . . . , where the defendant agreed in a plea bargain to be sentenced to a two-year term if he appeared for sentencing and a five-year term if he failed to appear for sentencing. The defendant failed to appear for sentencing and the court sentenced the defendant to a five-year term, which the appellate court deemed proper. (*Id.* at pp. 1113–1114.)" (*Puente*, *supra*, 165 Cal.App.4th at p. 1145, fn. 2.) It is effectively the same as a *Cruz* waiver.

executed the six-year sentence. (*Id*. at pp. 1146, 1148.) On appeal, the defendant argued, as relevant here, that the trial court violated his due process rights by not notifying him that he allegedly violated the terms of the *Vargas* waiver and by not specifying a reason why he was found in violation of the waiver. (*Id*. at p. 1145.) The appellate court dismissed the appeal for failure to obtain a certificate of probable cause. (*Id*. at p. 1150.)

In *Puente*, the *Cruz* waiver included in the plea form stated that the defendant understood that he could not receive any additional penalty or punishment for any subsequent failure to appear or any new offense unless he was " 'properly charged and convicted of such an offense,' " which right he explicitly waived. (*Puente, supra,* 165 Cal.App.4th at p. 1146.) The court explained that in "raising a due process argument, defendant is not appealing his sentence, rather he is challenging the procedure by which the trial court found him in violation of the terms of his *Cruz* waiver." (*Id*. at p. 1149.) But in his plea agreement the defendant expressly waived the right to be charged and convicted of a failure to appear or a new offense before an additional punishment could be imposed, and that waiver was "an explicit and integral part of" the plea. (*Id*. at p. 1150.) The defendant's due process arguments were a direct challenge to the validity of the plea's terms because he waived his right to be charged and convicted, and therefore such challenges required a certificate of probable cause. (*Ibid*.) The court explained, "Defendant is essentially contending that the trial court followed improper procedures when it found he violated the terms of the *Cruz* waiver. Defendant's challenge to the process by which the court found him in violation of the terms of his *Cruz* waiver is a direct challenge to the validity of his *waiver of his rights to be properly charged and convicted*." (*Ibid*., italics added.) The "defendant agreed that he could be given a greater sentence than that agreed

to in his plea bargain, without being properly notified and found in violation of the terms of the *Cruz* waiver." (*Id*. at p. 1151.)

Here, while Miller challenges the process by which the court found he violated the *Cruz* waiver, the plea agreement did not include an explicit waiver of any rights concerning the process by which the trial court would determine whether the *Cruz* waiver was violated. That is, Miller argues the trial court had to advise him of certain constitutional rights, and obtain a waiver of those rights, before finding he violated the *Cruz* waiver. If those rights existed,[5] in entering the plea agreement Miller did not explicitly waive them *as to a determination of a* Cruz *waiver violation*, which is distinguishable from the plea agreement in *Puente*. Thus, he is not attacking the validity of the plea agreement. (See *Rabanales*, *supra*, 168 Cal.App.4th at pp. 499, 501 [no certificate of probable cause was required when the defendant argued the trial court violated his due process rights by finding he violated his *Vargas* waiver without a jury trial].)

In sum, we conclude Miller's challenge does not require a certificate of probable cause.

### 3. Boykin–Tahl *Rights*

Miller argues the trial court violated his due process rights by finding he violated the *Cruz* waiver without first advising him of his constitutional rights under *Boykin–Tahl*. The People argue Miller forfeited his claim because he did not raise it in the trial court. Miller concedes he did not object at sentencing but contends this does not constitute forfeiture. It is well settled that " ' " ' "a constitutional right," or a right of any other sort, "may be

---

[5] At this juncture, we do not decide whether Miller's appeal has merit. (See *Buttram*, *supra*, 30 Cal.4th at p. 790 [certificate of probable cause rules "do not base the certificate requirement directly upon the dubious merit of a postplea appeal"].)

forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " ' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264, italics omitted.) We conclude that Miller's failure to raise this issue at the sentencing hearing forfeited his claim. (See *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 203; *People v. McClellan* (1993) 6 Cal.4th 367, 377 ["absent a timely objection, a defendant waives a claim of error as to a trial court's misadvisement concerning the consequences of a guilty plea"].)

*People v. Cross* (2015) 61 Cal.4th 164 (*Cross*) does not assist Miller. There, the trial court accepted the defendant's stipulation to a prior conviction without advising him of any trial rights or the penal consequences of such admission. (*Id*. at p. 169.) Even though the defendant did not object in the trial court, the Supreme Court concluded that he could not forfeit his claim that the court should have ensured his stipulation was voluntary and knowing by advising him of his right to a fair determination of the truth of the prior conviction allegation. (*Id*. at p. 173.) There, the constitutional standards of voluntariness and intelligence applied when a defendant waived a trial on a prior conviction allegation. (*Ibid*.) Here, by contrast, Miller does not challenge his admission to a prior conviction. Because Miller failed to object, he forfeited his contention that he was not advised of rights allegedly attached to a determination of the *Cruz* waiver violation.

Even if Miller did not forfeit his claim, we reject his challenge. He argues the trial court violated his due process rights when it determined he violated the *Cruz* waiver without advising him of his constitutional rights— which he specifies as the privilege against self-incrimination, the right to a trial on the *Cruz* waiver violation, and the right to cross-examine the CHP officer—and obtaining a waiver of those rights.

10

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. (See *Boykin v. Alabama* [, *supra*, ]395 U.S. 238, 243–244 . . . .) As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each. (. . . see . . . *In re Tahl* (1969) 1 Cal.3d 122, 130–133 . . . .) Proper advisement and waiver of these rights, conducted with 'the utmost solicitude of which courts are capable,' are necessary 'to make sure [the accused] has a full understanding of what the plea connotes and of its consequence.' " (*Cross*, *supra*, 61 Cal.4th at p. 170, citations omitted.) The same requirements of advisement and waiver also apply when a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment. (*In re Yurko* (1974) 10 Cal.3d 857, 860; *Cross*, at p. 170.) Our Supreme Court has explained that advisements need not be given before the court accepts a stipulation to evidentiary facts that is not the equivalent of an admission to a substantive offense or enhancement allegation. (*Cross*, at p. 171.) On the other hand, *Boykin*, *Tahl*, and *Yurko* requirements apply to an admission of guilt of a charge or the truth of an enhancing allegation where nothing more is prerequisite to imposition of punishment except conviction of the underlying offense. (*Ibid*.)

Miller provides no legal support for his contention that *Boykin–Tahl* advisements are required before a *Cruz* waiver violation may be found. He asserts that a determination of a *Cruz* waiver violation is the equivalent of admitting the truth of a prior conviction allegation because it allows the trial court to impose additional punishment. (See *In re Yurko*, *supra*, 10 Cal.3d at p. 860; *Cross*, *supra*, 61 Cal.4th at p. 170.) But Miller's admission of a prior

11

conviction is not at issue here. As part of the plea agreement, Miller admitted the aggravating factor allegation that he had served a prior prison or jail term. (Cal. Rules of Court, rule 4.421(b)(3).) On appeal, he does not challenge the advisements provided, or waivers obtained, when he entered his plea. Miller simply states, without support, that there "is no substantive difference between a prior conviction and a *Cruz* waiver violation" because both "authorize the trial court to impose additional punishment." Conceding that he provides no legal authority, Miller states that he "recognizes that California courts have not yet extended the requirement to advise defendants of their *Boykin/Tahl* rights to admissions of *Cruz* waiver violations." Therefore, we find no support for his claim.

Considering *Cruz* and *Vargas* waivers, "[a] violation of a *Vargas* waiver is a breach of the [plea] agreement. A trial court's determination as to whether there was a breach of the agreement is not the same as making a finding in aggravation or a discretionary sentencing choice . . . . [The trial court] was limited by the plea agreement to resolve any disputed factual contentions as to whether there was compliance with the conditions of release set forth in the plea agreement." (*Rabanales*, *supra*, 168 Cal.App.4th at p. 502.) Further, in the written plea agreement and in court, Miller was advised of, and waived, any *Boykin–Tahl* rights. While the plea agreement did not expressly provide that Miller waived any claimed *Boykin–Tahl* rights on a violation of the *Cruz* waiver, it contained a general waiver of those rights. No part of the plea agreement suggests, for example, a right to a jury trial or a right to cross-examine witnesses on a *Cruz* waiver violation which Miller sought to preserve. *Boykin–Tahl* rights were properly advised and waived for the charge to which Miller pleaded no contest. In this case, the DUI is only relevant to the *Cruz* waiver, the terms of which were part of the

12

plea agreement.  If the People charge Miller with a new offense, then *Boykin–Tahl* rights will attach in that proceeding.  Despite Miller's assertions otherwise, any so-called stipulation that the *Cruz* waiver was violated was not "tantamount to a guilty plea on the DUI offenses," nor does it show that any constitutional rights which would attach to a new charge were "extinguished."

To the extent Miller argues his due process rights were violated because he was not given an opportunity to contest the alleged *Cruz* waiver violation, to cross-examine the arresting officer, or to argue, for example, that he had been arrested in error, we disagree.  The trial court provided the requisite due process.  Miller had notice of both the terms of the *Cruz* waiver and the alleged violation.  He was arrested for the DUI in April 2024, three months after his plea agreement and a few days before the sentencing hearing.  Following his arrest, he was on notice he likely had breached the terms of the plea agreement to obey all laws.  (See *People v. Shelton*, *supra*, 37 Cal.4th at p. 767 ["negotiated plea agreement is a form of contract"].)  He had an opportunity to ready any questions, concerns, or countervailing considerations regarding the factual basis for his arrest, and he had ample opportunity to present them to the court at the sentencing hearing.  He did not do so.

At the sentencing hearing, with Miller and his counsel present, the prosecutor advised the trial court of Miller's DUI arrest, argued it was a violation of the *Cruz* waiver, and provided Miller's counsel and the court with the CHP report.  The court recessed which provided time for defense counsel to review the report.  When the hearing resumed, the court and counsel addressed the claimed *Cruz* violation and the CHP report.  Miller, through his counsel, had no objection to the court considering the report for purposes

13

of a *Cruz* waiver violation.  Miller himself apologized to the court.  Miller's counsel subsequently stipulated that, based on the CHP report, there was "sufficient evidence . . . to find" a *Cruz* waiver violation.  Through his counsel, Miller agreed to be sentenced.  He did not request a hearing beyond what occurred at the sentencing hearing nor did he request to present or cross-examine witnesses.  Miller himself argued that he did not deserve a three-year term, a sentence which the court could consider only if he violated the *Cruz* waiver.  Miller therefore had notice of the alleged violation and an opportunity to contest it.  (See *In re Harris* (2024) 16 Cal.5th 292, 322 [" ' "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' " ' "]; *People v. Delgadillo* (2022) 14 Cal.5th 216, 228 [" ' " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands' " ' "].)

In sum, Miller did not demonstrate that the trial court was required to advise him of *Boykin–Tahl* rights, and obtain a waiver of such rights, before determining whether he violated the *Cruz* waiver.  Additionally, to the extent Miller argues other due process rights were violated, we reject his contention.

### III.   DISPOSITION

The judgment is affirmed.

LANGHORNE WILSON, J.

WE CONCUR:


BANKE, ACTING P. J.


SMILEY, J.


A170446
*People v. Miller*